## OSTERHOUDT v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Third Department.   December 30, 1909.)

1. INSURANCE (§ 665*)—ACTION ON POLICY—EVIDENCE—SUFFICIENCY.
    In an action on a life policy obtained on a forged application, evidence *held* sufficient to show that plaintiff was a party to the fraud.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1713; Dec. Dig. § 665.*]

2. INSURANCE (§ 646*)—ACTION ON POLICY—PRESUMPTIONS.
    In an action on a policy on the life of plaintiff's sister and payable to insured's estate, which policy had been in the possession of plaintiff, it would be presumed that he had knowledge of the provisions of the policy.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1645-1648; Dec. Dig. § 646.*]

3. INSURANCE (§ 365*)—FORFEITURE FOR NONPAYMENT OF PREMIUM—REVIVAL OF POLICY.
    In an action on a life policy on the life of plaintiff's sister, it appeared that it was payable to her estate and was obtained from insurer by fraud. On learning the facts in regard to the fraud, an agent of insurer stated them to plaintiff, and after that no premiums were paid, and the policy was allowed to lapse, until insured became fatally ill, when insured made application for reinstatement, and plaintiff paid a premium and received a receipt providing that the company would not be liable on the policy until it had been revived on the books of the company and the money credited in the premium receipt book. On the margin of the receipt it stated that, if the company should accept the revived application, the amount of payment would be credited in the receipt book. Subsequently plaintiff paid another premium and obtained a receipt stating, "Unless you receive your policy, or your money is returned within three weeks, please notify the company." Insurer did not revive the policy on the books, nor were the moneys credited in the receipt book. *Held*, that there could be no recovery on the policy.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 932, 933; Dec. Dig. § 365.*]

4. INSURANCE (§ 651*)—ACTION ON POLICY—EVIDENCE.
    In an action on the policy, it was proper to permit plaintiff to be asked whether he had any talk with any one about reinstating the policy, as it was proper to show, after the policy had ceased to exist, whether it had been revived by the consent or permission of the insured.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1673-1675; Dec. Dig. § 651.*]

5. INSURANCE (§ 392*)—FORFEITURE OF POLICY—TENDER OF PREMIUMS PAID.
    Where an insurer desires to deny that a payment of a premium has given any rights under the policy, it is not necessary for it to tender the premium, where receipt of it is refused.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1041, 1042, 1045; Dec. Dig. § 392.*]

    Cochrane, J., dissenting.

Appeal from Ulster County Court.

Action by Dory Osterhoudt against the Prudential Insurance Company of America. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William D. Brinnier, for appellant.
N. Frank O'Reilly (John D. Eckert, of counsel), for respondent.

JOHN M. KELLOGG, J. The policy was obtained, upon a forged application containing answers clearly false, and without a medical examination, upon the life of a woman in a consumptive family, who was sick at the time. The policy was upon the life of the plaintiff's sister. They resided in the little village of Rosendale, and had apparently resided there for years. The plaintiff clearly knew the family history and her state of health. He gives no account of the circumstances under which the policy was delivered to him. It was taken out without the knowledge or consent of the sister. He says he obtained the policy from the agent Sammons, and the evidence shows that Sammons was guilty of making the fraudulent application and obtaining the fraudulent policy. Plaintiff's only claim of ownership is his general statement that after the policy was issued he had a conversation with her, and held the policy with her consent. He later gives the conversation as taking place in 1907, after the company had declared the policy fraudulent. He says he then had a conversation with her, and adds:

"They wanted me to have the policy; said I must keep it up, and I could have it."

The defendant's agent, Boyd, who discovered the fraud, communicated all the facts showing the fraudulent nature of the transaction to the plaintiff about April 25, 1907, which did not apparently surprise the plaintiff. He stated, however, that he owned the policy. He added nothing to Bell's statement of the interview. Bell also stated that the sister said that, if plaintiff owned the policy, she had no objection to his having it. Plaintiff swears his sister owed him, but he states no circumstance showing that such is the fact. The manner in which he obtained the policy from the person perpetrating the fraud, and the fact that he gives no explanation of his connection with it, indicates clearly that he was a party to the fraud, as he alone was to receive the principal benefits of the fraud.

An application for reinsurance was made by the assured March 19, 1908, perhaps at the instigation of the company, to show the fraud which had been practiced upon it, but that is not clear. Dr. Rice then examined her, and he says that she had consumption and was pretty well along with it. She died April 14, 1908, of consumption. The policy was in the plaintiff's possession, and provides:

"Sixth. Reviving policy. If the policy is lapsed for nonpayment of premiums, it will be revived within one year from the date to which premiums have been paid, upon payment of all arrears, provided evidence of the insurability of the insured, satisfactory to the company, be furnished.

"Seventh. Alterations and Waivers.—No person except the president, one of the vice presidents, secretary, assistant secretary, or actuary of the company can alter this contract or waive any condition, privilege, or provision thereof."

It does not appear but that the plaintiff had full knowledge of these provisions. He is presumed to have had such knowledge. It is a

broad stretch of imagination to say that the plaintiff obtained this policy in good faith and was not a party to the fraud. The company discovered the fraud April 25, 1907, and the plaintiff was then given full information as to the fraud, and made no further payments upon the policy. He and the company alike treated the policy as of no further force. On February 19, 1908, when his sister was clearly in the last stages of consumption, which fact must have been known, plaintiff paid to the agent of the company $14.40 and received therefor a renewal receipt, conditioned by its terms as follows:

"Under no circumstances will the company be liable under said policy in case of death until the policy has been revived on the books of the company and the money credited in the premium receipt book belonging with said policy."

And on the margin of the receipt appeared the words:

"If the company accept the revival application, the amount of payment will be credited in the premium receipt book belonging with the policy; otherwise, the money will be returned."

On February 29th plaintiff paid to another agent of the company $4.40, being the premium for the next 10 weeks, and took a receipt therefor. He says he did not read the receipt upon which it says:

"Unless you receive your policy, or your money is returned within three weeks from the date of this receipt, please notify the company, giving the name of the agent, amount paid, and the date when paid."

The company did not revive the policy on the books; neither were the moneys credited upon the receipt book belonging with the policy and held by the plaintiff. It is not clear from the plaintiff's evidence whether the company tendered back the $4.40 before or after the death of the plaintiff's sister. A tender of the $4.40 and the $14.40 was not necessary, as the plaintiff told the company that he refused to receive it. He swears he could not say whether it was within a month before or a month after the company sent him the letter of April 18, 1908. It is not quite clear from the plaintiff's evidence when such refusal took place. At the time the plaintiff paid the $14.40, he knew that his policy was fraudulent, and that the defendant had repudiated it, and he had acquiesced, and he knew that his sister was dying with consumption, and not an insurable risk. It is offering too much premium upon fraud to permit a recovery in this case, and we are not permitted to warp the actions of the parties beyond their natural force and effect.

On direct examination the plaintiff swore that after the policy had issued he had it in his possession with his sister's consent, and upon his redirect examination he swears that he had a conversation with her after the representative of the company, in the spring of 1907, told him of the fraudulent nature of the policy, in which he says:

"They wanted me to have the policy; said I must keep it up, and could have it."

On cross-examination the defendant asked the plaintiff these questions:

"Did you talk with anybody with reference to filing an application for a reinstatement of this policy after you knew it had lapsed?

"Did you talk with your sister about this policy being reinstated or revived after you heard it had lapsed for nonpayment of premiums?"

Plaintiff's objection to each question was sustained, and the defendant excepted. When the defendant's representatives told the plaintiff the policy was fraudulent, he raised no objection. It was proper to show whether he had any talk with any one about reinstating the policy. It was clearly competent to show, after the policy had ceased to exist, whether it had been revived by the consent or permission of the insured.

For the reasons stated, the judgment should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur, SEWELL, J., in result, except COCHRANE, J., who dissents.